[No. 86413-6.   En Banc.]
Argued June 12, 2012.     Decided January 24, 2013.

JOHN STAPLES, *Petitioner*, v. ALLSTATE INSURANCE COMPANY,
*Respondent*.

*Daniel R. Fjelstad* (of *Scott Kinney & Fjelstad*), for petitioner.

*Rory W. Leid* and *Midori R. Sagara* (of *Cole/Wathen/Leid/ Hall PC*), for respondent.

*Bryan P. Harnetiaux* and *George M. Ahrend* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 WIGGINS, J. — This case requires us to examine an insured's duty to cooperate with an insurer's claim investigation. The petitioner, John Staples, had his insurance claim denied for failure to cooperate—namely, failure to submit to an examination under oath (EUO). Staples sued his insurer for bad faith and related causes of action, but the trial court dismissed the case on summary judgment. We examine the record and, after answering three questions about an insured's duty to cooperate, conclude that genuine factual issues make summary judgment inappropriate in this case. In particular, the trial court did not require a showing of actual prejudice before dismissing the case, and no such showing was made. Accordingly, we reverse summary judgment and remand the case for further proceedings.

## FACTS

¶2 On or around August 18, 2008, a 1992 Ford Econoline van belonging to John Staples was stolen from a parking lot

in Redmond, Washington. In the back of the van, Staples had stored a large collection of tools.

¶3 Staples reported the theft to the police, telling them the tools were worth around $15,000. The police report says, "Staples told me that it would cost $15,000 to replace the tools and equipment stored in the van." Clerk's Papers (CP) at 152. The report describes the van as a "work truck" and says that it was a "mobile workshop for the business that Staples contracted with." *Id.*

¶4 Two weeks later, Staples submitted a claim for loss of the tools to Allstate under his homeowner's policy.[1] He told Allstate that the tools were worth between $20,000 and $25,000 and that they were for his personal use (although they "could be used" for work).[2] *Id.* at 163.

¶5 Based on these apparently inconsistent statements, Allstate transferred Staples' claim to its special investigation unit. Allstate requested documents from Staples, including proof of ownership, a sworn statement in proof of loss, an authorization to release information, and three years of tax returns. Allstate took two recorded statements from Staples, neither of which was under oath (despite Staples' claims that he believed they were).

¶6 Over the next few months, Staples failed to provide the requested documentation despite several written requests from Allstate. It was not until December 11, 2008, nearly four months after the loss, that Staples submitted his sworn statement in proof of loss and authorization to release information.

¶7 On January 15, 2009, Allstate requested by letter that Staples appear for an EUO on January 29, also requesting documentation related to the loss by the following day, January 16. This gave Staples only one day to produce the

---

[1] Staples also submitted a claim for damage to his truck under his auto policy, which Allstate paid.

[2] This fact is presumably relevant to a coverage determination, although we cannot be sure because that portion of Staples' policy is not in the record.

requested documents. The letter said, "If there are legitimate reasons which make attendance [at the EUO] on this day impossible, please advise immediately so that the examination can be rescheduled if appropriate." *Id.* at 62.

¶8 On January 23, Allstate sent a letter to Staples, stating that his EUO was canceled because he had not produced the requested documentation. The letter also said, "If the materials are provided, we will contact you to reschedule the exam." *Id.* at 128. This suggests Allstate would reschedule the exam only once the documents were produced, although the record is unclear on this point. The letter was mailed on the same day as a letter from James Sullivan, an attorney Staples had recently hired, who informed Allstate that Staples could not attend an EUO on January 29.

¶9 Upon receiving Staples' letter, Allstate requested that Staples contact Allstate to reschedule the EUO, also reiterating its request for documentation. This time, Allstate did not indicate that it would reschedule the EUO only after Staples produced the requested documents. The record is unclear whether this was in fact a condition that Staples would need to meet before he would be permitted to reschedule his EUO.

¶10 Staples hired attorney Daniel Fjelstad, who immediately began accusing Allstate of delay and of violating the insurance fair conduct act (IFCA). Allstate responded by reiterating its request for Staples to provide documentation and reschedule the EUO.

¶11 Staples did neither, instead accusing Allstate of making "burdensome" and "vexatious" requests constituting "harassment." *Id.* at 77-78. Staples demanded a justification for Allstate's documentation request, and Allstate responded that the records were necessary to evaluate whether Staples had filed a false claim.[3]

---

[3] Allstate justified its request as follows: "Your client's financial records are material to Allstate's investigation. First, as you raised, and the above case law

¶12 Allstate initially set a deadline of March 31, 2009, for Staples to produce documents and reschedule the EUO but eventually extended this deadline to April 15. When Staples did not attempt to reschedule, Allstate denied his claim on April 30, 2009. The parties dispute whether Staples provided the documents Allstate requested, but it appears Staples provided many of the documents substantiating the value of his stolen tools.

¶13 Three and a half months after Allstate denied his claim, Staples' attorney wrote a letter to Allstate saying that Staples was "willing to appear at an EUO" if Allstate would agree to extend the contractual time limit for filing suit (which was about to expire). *Id.* at 98. Allstate responded that it was "unwilling to extend the one year suit limitation . . . ." *Id.* at 101.

¶14 On August 24, 2009, Staples sued Allstate in King County Superior Court, alleging breach of contract, bad faith, and violation of the IFCA. Three months later, Allstate moved for summary judgment, seeking to dismiss the claims. Staples opposed the summary judgment motion, but in the alternative asked the court to grant a continuance to allow him to conduct discovery.

¶15 On December 17, 2009, King County Superior Court Judge González ordered summary judgment for Allstate and dismissed the suit with prejudice. Staples appealed, and the Court of Appeals affirmed in an unpublished opinion by Judge Spearman. We granted review.

## ISSUES

¶16 (1) Must an insurer's request for an EUO be reasonable or material to the insurer's claim investigation?

supports, whether your client has a financial motive to file a false claim is material. Second, your client's financial records may support his claim to have ownership of the items allegedly taken in the theft. Third, the financial records will show your client's employment and business history[,] which is also relevant to Allstate's investigation. As such, your client's claim may be closed or denied if he fails or refuses to provide the financial information requested." CP at 80-81.

¶17 (2) Did the insured in this case, John Staples, substantially comply with Allstate's request for an EUO?

¶18 (3) Must an insurer show prejudice before denying a claim for failure to submit to an EUO?

## STANDARD OF REVIEW

¶19 When reviewing a summary judgment order, we engage in the same inquiry as the trial court, affirming summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party, and summary judgment is appropriate only if reasonable minds could reach but one conclusion. *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

## ANALYSIS

### *Background on the duty to cooperate*

¶20 Most insurance policies contain cooperation clauses requiring the insured to cooperate with the insurer's handling of claims. *See* THOMAS V. HARRIS, WASHINGTON INSURANCE LAW § 13.02, at 13-11, 13-12 (3d ed. 2010). Typically, an insured that "substantially and materially" breaches a cooperation clause is contractually barred from bringing suit under the policy if the insurer can show it has been actually prejudiced. *Id.* § 13.02, at 13-14. The burden of proving noncooperation is on the insurer. *Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 375-76, 535 P.2d 816 (1975).

¶21 The duty to cooperate can take several forms. Some policies have "general" cooperation clauses that simply require the insured to cooperate with the insurer's investigation of the claim. *See* LEE R. RUSS & THOMAS F. SEGALLA, 14 COUCH ON INSURANCE 3D § 199:1 (3d ed. 1995). These clauses

are often included in third-party[4] insurance policies because, in that context, the insurer cannot always predict what kind of cooperation will be needed to resolve litigation. *Id.* Other policies enumerate specific ways in which the insured must cooperate. For example, many policies require the insured to give the insurer notice of loss, submit to an EUO, or submit to an independent medical examination. *Id.* These specific, enumerated duties are common in the first-party insurance context where the scope of needed cooperation is more predictable. *Id.*

¶22 Cooperation is essential to the insurance relationship because that relationship involves a continuous exchange of information between insurer and insured interspersed with activities that affect the rights of both. *Id.* The relationship can function only if both sides cooperate. Cooperation clauses also guard against collusion and fraud. *See Eakle v. Hayes,* 185 Wash. 520, 524-25, 55 P.2d 1072 (1936).

¶23 Staples' homeowner's policy with Allstate is a first-party policy containing specific, enumerated cooperation duties, including the requirement that Staples submit to an EUO:

### 3. What You Must Do After A Loss

In the event of a loss to any property that may be covered by this policy, **you** must:

. . . .

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

. . . .

f) as often as **we** reasonably require:

. . . .

---

[4] Generally speaking, third-party insurance covers liability to a third party whereas first-party insurance covers personal loss. *See Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.,* 161 Wn.2d 903, 914 n.8, 169 P.3d 1 (2007).

> 2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
>
> . . . .

CP at 149. Under the policy, Allstate has no duty to provide coverage if Staples does not comply with his duties and Allstate is prejudiced:

> 3.   . . . .
>
>> **We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

*Id.* Failure to comply also precludes Staples from suing Allstate:

> 12. **Action Against Us**
>
> No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which Section I Conditions applies, unless:
>
> a)   there has been full compliance with all policy terms; and
>
> b)   the action is commenced within one year after the inception of loss or damage.

*Id.* Based on this language, Allstate denied Staples' claim. The parties dispute whether this decision was correct and whether summary judgment was appropriate. Staples raises three duty to cooperate issues, and we address each in turn.

## I.   Issue 1: Must an insurer's request for an EUO be reasonable/material to the insurer's claim investigation?

¶24 Staples first argues that summary judgment was inappropriate because there are fact issues regarding whether Allstate's request for an EUO was "material,"

"justifiable," or "reasonable." We must decide whether there is any requirement that an insurer's request for an EUO be reasonable or material. This appears to be a question of first impression.

¶25 Where a *general* cooperation clause is involved, an insurer's requests for information must be "material to the circumstances giving rise to liability on [the insurer's] part." *Dien Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 224, 961 P.2d 358 (1998).

¶26 However, here we are dealing with an EUO clause, not a general cooperation clause. Staples argues that there is no reason to treat an EUO provision any differently from any other cooperation clause. He points out that the insurer stands in a quasi-fiduciary relationship to the insured and must give the same consideration to the insured's interests as to its own. RCW 48.01.030 requires insurers to be "actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." In light of this good faith obligation, Staples argues, an insurer can demand an EUO only if it would be material to the claim investigation, the implication being that anything less would be in bad faith.

¶27 On the other hand, Allstate argues that it has an absolute right to an EUO without regard to materiality or reasonableness. It argues that the EUO is an essential and valid tool for investigating claims and cross-examining policyholders. Allstate cites a Court of Appeals opinion, *Downie v. State Farm Fire & Cas. Co.*, in which Division One concluded that an insurer has an absolute right to at least one EUO, but multiple requests must be reasonable as to their amount. 84 Wn. App. 577, 582-83, 929 P.2d 484 (1997).

¶28 We agree with Staples that there must be some outside limit to an insurer's ability to demand an EUO. As we said in *Tran*, "an insurance company should not have license to burden an insured with demands for items that are immaterial." 136 Wn.2d at 232. For example, it would

surely violate an insurer's good faith duty to demand an EUO from every single claimant simply to burden insureds and set up pretexts for denying claims.

¶29 Given the quasi-fiduciary nature of the insurance relationship, we hold that if an EUO is not material to the investigation or handling of a claim, an insurer cannot demand it. To the extent *Downie* suggests otherwise, we disapprove it.

¶30 In this case, it appears that Allstate was within its rights to request an EUO. In general, "[i]nformation is material when it 'concerns a subject relevant and germane to the insurer's investigation as it was then proceeding' at the time the inquiry was made." *Id.* (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F.2d 179, 183 (2d Cir. 1984)). Here, although it appears an EUO was justified given the discrepancies between the police report and Staples' insurance claim, we cannot be sure because Allstate never explained what information it was seeking from the EUO that Staples had not already provided. Staples had already given two recorded interviews, produced documents, and signed a broad authorization allowing Allstate to obtain records from other sources. CP at 98, 141, 173. It is not clear what additional information Allstate hoped to uncover by conducting an EUO. Because the record is incomplete in this regard, we decline to decide this issue and resolve the case on issues 2 and 3 instead.

II. Issue 2: Did Staples substantially comply with All-state's request for an EUO?

¶31 Staples next argues that summary judgment was inappropriate because there are fact issues regarding whether he substantially complied with Allstate's request for an EUO. We agree. Breach of a cooperation clause is measured by the yardstick of substantial compliance. *Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 89 Wn. App. 712, 720, 950 P.2d 479 (1997) (citing *Shaw v. Standard Fire Ins. Co.*, 129 Wash. 576, 578-79, 225 P. 651 (1924); *Georgian*

*House of Interiors v. Glens Falls Ins. Co.*, 21 Wn.2d 470, 483, 151 P.2d 598 (1944)).

¶32 Here, there are unresolved fact issues regarding substantial compliance. Staples does not dispute that no EUO took place. However, he did appear for two scheduled interviews, giving Allstate ample opportunity to examine him. Staples also offered to appear for an EUO if Allstate would extend the deadline for filing suit and signed a broad authorization allowing Allstate access to a wide range of financial documents. These facts on their own do not prove substantial compliance, but at the summary judgment stage they do not need to because we are required to view all facts in a light most favorable to Staples. It is enough that the record demonstrates a genuine question of material fact.

¶33 There is another, more serious, problem with the summary judgment order. The record permits a reasonable inference that Allstate refused to reschedule Staples' EUO until he complied with Allstate's document requests. If Allstate did so, this naturally leads to the factual question whether Staples substantially complied with Allstate's document requests. This is a thorny question that we cannot resolve on the summary judgment record. The trial court resolved this case on the EUO issue alone, so the record does not even show what documents Staples produced, and certainly at this stage reasonable minds could disagree on the question of substantial compliance.

¶34 There are good reasons to believe Staples substantially complied with Allstate's document request. Indeed, Allstate appeared to be satisfied with much of what Staples produced. In its early letters to Staples, Allstate requested eight categories of documents, four of which related to substantiating the amount of theft loss and four of which were requests for Staples' financial records, such as tax returns. However, after Staples provided Allstate with an initial set of documents, Allstate's next letter requested only the financial records. This raises the inference that

Staples satisfied the more important of Allstate's requests by providing many of the documents one would expect to be most important to a theft case, suggesting he substantially complied. Given this, Allstate should have rescheduled the EUO. But it did not. In this way, substantial compliance with the document request gives rise on summary judgment to an inference in that Staples substantially complied with the EUO request.

¶35 The combination of these two interconnected fact issues prevents resolution of Staples' claim on summary judgment. And as discussed below, summary judgment is also precluded because the trial court failed to require Allstate to show actual prejudice before denying Staples' claim.

¶36 The difference between our opinion and the dissent is that we prefer to allow a jury to determine Staples' arguably substantial compliance with the policy and Allstate's possible prejudice from Staples' behavior, while the dissent believes these issues can be resolved on the somewhat incomplete record before us. Dissent at 422 ("Staples did not substantially comply with his insurance policy, and under *Tran*, Allstate suffered actual prejudice as a result." (citation omitted)). With all due respect to the dissent, we believe it is unclear and disputed whether Staples substantially complied with Allstate's demand for more documents and an EUO and whether Allstate suffered prejudice.

### III. Issue 3: Must an insurer demonstrate prejudice before denying a claim for failure to submit to an EUO?

¶37 The third issue we must address is whether Allstate was required to show prejudice before denying Staples' claim for noncooperation.[5] Staples argues that an insurer

---

[5] The Court of Appeals declined to address this issue, saying that Staples argued it "only in passing" and without citation to authority. *Staples v. Allstate*

must show prejudice before it can rely on breach of a cooperation clause to deny a claim. Allstate counters by citing *Downie* and arguing that an EUO is a valid condition precedent to bringing suit, so no prejudice need be shown.

¶38 Allstate's argument is an attempt to resurrect a legal distinction we abandoned over 30 years ago. Before 1975, our case law recognized a division between two different kinds of cooperation clauses: one kind for which cooperation is a condition precedent to filing suit, and another kind for which cooperation was merely a "covenant" and prejudice needed to be shown. *See, e.g., Van Dyke v. White*, 55 Wn.2d 601, 605-06, 349 P.2d 430 (1960); *see also Salzberg*, 85 Wn.2d at 375-76. To determine which was which, we looked to the language of the policy to see if it expressly made cooperation a condition precedent. *Salzberg*, 85 Wn.2d at 375-76.

¶39 In *Salzberg*, we abandoned this distinction, noting that a majority of courts had already done so. *Id.* at 376. We said that it was not appropriate for the rights of insureds and the duties of insurers to depend on "the legalistic conundrum of whether the cooperation clause is an express condition precedent or only a covenant. Such an approach places an undue emphasis on traditional, technical contract principles and their dubious application in cases of this nature." *Id.* We cited public policy considerations as well, pointing out that the condition precedent rule needlessly reduced protection of insureds: "Such relief, absent a showing of prejudice, would be tantamount to a questionable windfall for the insurer at the expense of the public." *Id.* at 377.

¶40 We reaffirmed this analysis in the first-party insurance context in *Tran*, holding again that noncooperation does not absolve an insurer of liability unless the

*Ins. Co.*, noted at 161 Wn. App. 1038, 2011 WL 1896217, at *3, 2011 Wash. App. LEXIS 1142, at *11. This is inaccurate; Staples raised this issue multiple times in his Court of Appeals brief and cited to authority. In any event, he addresses the issue at length in his supplemental brief, and so does amicus Washington State Association for Justice Foundation.

insurer was actually prejudiced. 136 Wn.2d at 228. The cooperation clause at issue in *Tran* was not a general clause but a specific one, requiring the insured to produce documents. Indeed, we have required a showing of prejudice for many nongeneral cooperation clauses, including a clause requiring the insured to obtain the insurer's consent before settling, *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789, 803-04, 881 P.2d 1020 (1994), and a clause requiring the insured to give the insurer notice of pending lawsuits, *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 452-53, 313 P.2d 347 (1957).

¶41 Allstate argues that the EUO requirement is simply different from the general duty to cooperate, so no showing of prejudice is required. But we see no meaningful difference. We have required a showing of prejudice in nearly all other contexts to prevent insurers from receiving windfalls at the expense of the public and to avoid hinging relief on a discredited legalistic distinction. The same concerns apply equally to the EUO requirement.

¶42 Allstate's arguments also ignore the plain language of Staples' policy, which states:

> **We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

CP at 149. The EUO provision is item (f) in the list alluded to above. Thus, even if we were to ignore our prior cases, a showing of prejudice is still required by the clear terms of Staples' policy.

¶43 *Salzberg* and *Tran* control this case. We follow those cases and disapprove the Court of Appeals' decision in *Downie*.

### Allstate has not met its summary judgment burden of showing actual prejudice

¶44 A claim of actual prejudice requires " 'affirmative proof of an advantage lost or disadvantage suffered as a result of the [breach], which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability.' " *Tran*, 136 Wn.2d at 228-29 (alteration in original) (quoting *Canron, Inc. v. Fed. Ins. Co.*, 82 Wn. App. 480, 491-92, 918 P.2d 937 (1996)). Prejudice is an issue of fact that will seldom be established as a matter of law. *Id.* at 228. Prejudice will be presumed only in "extreme cases." *Pub. Util. Dist. No. 1*, 124 Wn.2d at 805. On summary judgment, we must consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Dowler*, 172 Wn.2d at 484.

¶45 Here, genuine issues of material fact exist regarding whether Allstate was prejudiced by Staples' failure to appear for an EUO. Allstate had two opportunities to question Staples during his two recorded interviews. Staples also provided Allstate with some, though not all, of the documentation Allstate requested. Had it chosen to, Allstate could have simply scheduled another EUO without waiting for Staples to produce additional documents. Instead, Allstate waited for Staples to reschedule and may have even conditioned rescheduling on production of additional documents. Given that Allstate made little effort in this regard, Allstate has not shown prejudice to the degree necessary for summary judgment. Under these circumstances, prejudice was a fact issue that should have gone to the jury.[6]

¶46 Allstate argues that this case is no different from *Tran*, where we found that the insurer was prejudiced as a

---

[6] However, we reject Staples' argument that any possible prejudice to Allstate would have been cured if Allstate had simply agreed to extend the limitation period in order to take Staples' EUO. Suppl. Br. of Appellant at 9.

matter of law. 136 Wn.2d at 231-32. Allstate is correct that there are factual similarities between *Tran* and this case. In *Tran*, the insured made a claim based on a burglary loss but expressly refused to cooperate with State Farm's investigation. *Id.* at 218-21. He delayed State Farm's investigation by months, refusing to return phone calls and rejecting requests for information. *Id.* He appeared for an EUO but expressly refused to answer many of State Farm's questions. *Id.* at 221. We held that State Farm had a right to investigate Tran's claim while the facts were still fresh[7] and that Tran's "intransigence" prejudiced State Farm's investigation as a matter of law. *Id.* at 231-32.

¶47 But there are also meaningful differences between this case and *Tran*. *Tran* was an extreme case, in which the insured stonewalled the insurer's investigation, refusing to help or provide documentation. Importantly, the insurer in *Tran* was faced with the "Hobson's choice" of either paying a suspected fraudulent claim, or exposing itself to bad faith liability. *Id.* at 230. Allstate was not faced with that choice here. Allstate canceled the initially scheduled EUO and never set another date for an EUO even after Staples offered to appear. Further, in *Tran* the claim was based on a burglary—the facts of which would be extremely difficult to investigate after the fact. Here, Allstate does not dispute the underlying theft, only the amount and whether the tools were for personal or business use. Allstate could quite possibly have investigated these matters at a later date when Staples offered to appear for an EUO. On summary judgment, absent proof to the contrary, we must assume Allstate could have done so.

¶48 Most importantly, we should be careful not to read *Tran* as creating a per se rule that every time an investigation is delayed the insurer can simply deny the claim for

---

[7] Similarly, in *Sears* we said that an insurer has a right to investigate the case " 'before all the evidence is washed away by the rain.' " 50 Wn.2d at 453. Here, Allstate has made no showing that Staples' delay caused any evidence to be lost.

noncooperation. This would undermine the actual prejudice requirement. We should not allow the result in *Tran* to overshadow the rule established by that case, which is that an insurer must show actual prejudice, which is "seldom . . . established as a matter of law" and requires the insurer to produce " 'affirmative proof of an advantage lost or disadvantage suffered . . . .' " *Id.* at 228-29 (quoting *Canron*, 82 Wn. App. at 491-92). Here, unlike in *Tran*, the question of prejudice is too close a call to establish as a matter of law.

¶49 Instead of reading *Tran* to create a per se rule relieving the insurer of its burden, we require affirmative proof of prejudice as we did in *Public Utility District No. 1*. There, we refused to establish prejudice as a matter of law while applying *Salzberg* by analogy to a consent-to-settle clause. *Pub. Util. Dist. No. 1*, 124 Wn.2d at 804-05. We reiterated that the burden to affirmatively show prejudice is on the insurer and that prejudice is a fact issue. *Id.* at 804. We also stated the policy reason behind this rule: insurers should not get a windfall at the insured's expense. *Id.* at 803-04. Accordingly, absent "extreme" facts, we do not presume prejudice. *Id.* at 805. This case does not present extreme facts. It may be true that Allstate suffered prejudice, but on this record, reasonable minds could reach different conclusions. As such, summary judgment was inappropriate.

¶50 Last, Staples argues that the trial court abused its discretion by denying his CR 56(f) request for more time to conduct discovery. We decline to reach this issue because we reverse summary judgment on other grounds.

## CONCLUSION

¶51 We reverse. Even if Allstate were within its rights to ask for an EUO, there are fact issues about whether Staples substantially complied with Allstate's request. Further, the trial court should have required a showing of prejudice, and there are fact issues about whether Allstate in fact suffered

prejudice. It may well be that Staples did *not* substantially comply and that Allstate *was* sufficiently prejudiced to justify denying Staples' claim, but on this record material issues of fact preclude summary judgment.

MADSEN, C.J.; C. JOHNSON, OWENS, FAIRHURST, and STEPHENS, JJ.; and CHAMBERS and JOHANSON, JJ. PRO TEM., concur.

¶52 J.M. JOHNSON, J. (dissenting) — Instead of attending an examination under oath (EUO) as Allstate Insurance Company requested, and the policy provides, to process his suspect claim, John Staples engaged in delay tactics for months. Only after Allstate ultimately denied his claim did Staples attempt to schedule the EUO, and only on the condition that Allstate agree to extend the time under which Staples could bring suit. Despite all this, the majority holds factual issues remain as to whether Staples "substantially complied" with the insurance policy and whether Allstate was prejudiced by his conduct. The majority's position is inconsistent with our precedent and undermines the clear and unambiguous terms of the policy that governed the relationship between these parties. Staples did not substantially comply with his insurance policy, and under *Dien Tran v. State Farm Fire & Casualty Co.*, 136 Wn.2d 214, 231, 961 P.2d 358 (1998), Allstate suffered actual prejudice as a result. Staples' claims were properly dismissed. I dissent.

¶53 On or about August 18, 2008, Staples reported to police that his vehicle was stolen and that it contained work tools worth $15,000. Two weeks later, Staples submitted a claim under his Allstate homeowner's policy, stating the tools were for personal use[8] and were worth between $20,000 and $25,000. Due to these inconsistencies, Staples'

---

[8] The inconsistency regarding whether the tools were used for business or personal purposes was presumably deemed relevant by Allstate because Allstate's homeowner's policy does not cover the loss of work equipment.

claim was routed to Allstate's special investigations unit for further inspection.

¶54 Pursuant to Staples' insurance policy, Allstate requested that Staples submit certain documents relating to Staples' ownership of the claimed items and Staples' financial and employment history. Staples produced some, but not all, of the requested documentation. Allstate scheduled an EUO—also pursuant to the terms of Staples' insurance policy. Staples claimed he could not make the EUO scheduled by Allstate and made no effort to reschedule the EUO at a more convenient time. For several months, Allstate notified Staples that he had not responded sufficiently and noted the potential consequences of his noncompliance. Still, instead of producing the requested documents or finding a mutually agreeable time for an EUO, Staples refused to cooperate and demanded that Allstate justify each request. Over six months after Staples' claim was filed, it was denied for noncooperation. Three months later, Staples wrote to Allstate, stating he was willing to appear at an EUO but only if Allstate agreed to extend the time limit under which Staples could bring suit. After Allstate refused to make this concession, Staples sued.

¶55 The majority's conclusion that Staples may have "substantially complied" with his insurance policy is dubious. Staples' policy unequivocally required a claimant to provide any and all pertinent documentation reasonably requested by Allstate: "In the event of a loss to any property that may be covered by this policy, **you** must . . . give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request . . . ." Clerk's Papers at 149. The policy also required a claimant to submit to an EUO at Allstate's reasonable request. *Id.* Staples partially complied with only the first of these requirements and made no effort to comply with the second until after his claim was denied. Unlike the majority, I fail to see how Staples' late demand that Allstate vary the terms of the contract by extending the time under which he

could file suit amounted to "substantial compliance" with the policy as it was written.

¶56 The majority also implies the EUO was unnecessary because Allstate had "ample opportunity to examine" Staples during two unsworn interviews. Majority at 415. This assertion ignores the basic differences between an interview under oath and a more casual, unsworn statement. Washington courts have noted the importance of the examination under oath even when other interviews have been conducted. *See, e.g., Downie v. State Farm Fire & Cas. Co.*, 84 Wn. App. 577, 583-84, 929 P.2d 484 (1997) ("[A] recorded interview is not equivalent to an EUO because (1) a recorded statement is unsworn when it is made, (2) insurers in practice do not intend that recorded statements substitute for EUOs, and (3) the policy language allows insurers to conduct multiple interviews."). In *Georgian House of Interiors v. Glen Falls Insurance Co.*, 21 Wn.2d 470, 482-83, 151 P.2d 598 (1994), the insured had submitted to an unsworn examination, but we held this did not constitute "sufficient compliance with the provisions of the policies to excuse appellant after demand made upon it to submit to examination under oath and produce for examination its books, records, etc." Likewise, Staples' failure to submit to an EUO amounted to noncompliance.

¶57 Not only did Staples fail to substantially comply with the terms of the policy, but Allstate suffered prejudice as a result. In *Tran* we stated:

> If insurers are inhibited in their effort to process claims due to the uncooperativeness of the insured, they suffer prejudice . . . . If we were to reach any other result, we would be encouraging insureds to not cooperate and to submit fraudulent claims.

136 Wn.2d at 231. Tran had provided the police and State Farm with conflicting stories regarding a burglary. *Id.* at 227. During the course of State Farm's investigation, Tran appeared for an EUO but refused to answer some of the questions. *Id.* at 221. He also failed to produce many

documents requested by State Farm for months and ultimately refused to provide records relating to his financial situation. *Id.* We held State Farm was prejudiced by these actions as a matter of law:

> [A]n insurer suffers prejudice, as a matter of law, when its insured fails to provide it with the financial records it reasonably needs in order to complete an investigation into the question of whether the insured's claim was fraudulent.

*Id.* at 217.

¶58 The majority distinguishes *Tran* on the grounds that State Farm was faced with a " 'Hobson's choice' of either paying a suspected fraudulent claim, or exposing itself to bad faith liability." Majority at 420 (citing *Tran*, 136 Wn.2d at 230). The majority asserts Allstate was not in the same predicament because Staples offered to appear for an EUO (after his claim had been denied) and because the underlying theft was not in dispute. Although Allstate did not challenge Staples' assertion that his van had been stolen, the amount and value of the tools in the van and the nature of their use were at issue. Like State Farm in *Tran*, Allstate was not presented with a meaningful choice. It could pay off a claim that may be fraudulent (or at least worth less than Staples claimed), deny the claim and open itself up to a lawsuit, or, if it decided to continue the investigation, concede to Staples' unilateral demand that Allstate allow Staples additional time to sue.

¶59 In any case, because of Staples' failure to fulfill his obligations under the policy, Allstate did not have access to the information it requested while the claim was still fresh. We have stated that an insurer has the right to investigate a claim " 'before all the evidence is washed away by the rain.' " *Sears, Roebuck & Co. v. Hartford Accident & Indem. Co.*, 50 Wn.2d 443, 453, 313 P.2d 347 (1957). The majority brushes this issue aside, stating Allstate "made no showing that Staples' delay caused any evidence to be lost." Majority at 420 n.7. Yet, how could Allstate point to evidence that

had been lost or altered without first knowing all the evidence that was available? It could not. Allstate was prejudiced as a matter of law by Staples' substantial delay and failure to cooperate with the investigation.

CONCLUSION

¶60 The majority holds an insured individual with a questionable claim that frustrates the company's claim investigation for months by refusing to submit to an EUO as required by the insurance policy may still bring suit against the insurance company for denying his claim based on his noncooperation. Today's decision invites insureds to put minimal effort into complying with the terms of their insurance policies, expecting the company to pay. I would hold Staples' refusal of an EUO does not create a factual question of whether he "substantially complied" with his Allstate policy. I would further hold Staples' conduct prejudiced Allstate because Allstate did not have access to all the information it needed to assess Staples' claim in a timely fashion. I respectfully dissent.