

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 JUL -7 AM 9: 26

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MIRTHA ANGARITA, individually,  )
            )  DIVISION ONE
     Respondent, )
            )  No. 70201-7-I
       v.    )
            )
ALLSTATE INDEMNITY COMPANY, )  UNPUBLISHED OPINION
a foreign insurance company,   )
            )
     Appellant,  )
            )
PERLA VILLANUEVA, JEFFREY  )
BUTLER, OLYMPIC PROPERTIES, )
INC., a Washington corporation  )
            )
     Defendants. )  FILED: July 7, 2014
            )

DWYER, J. — In Washington, automobile insurance (unlike almost all other forms of insurance) is mandatory. The purpose of mandatory automobile insurance is to protect not only the insured drivers, but also other persons using public roadways. Accordingly, automobile insurance cannot be examined without consideration of public policy. In this case, public policy does not allow an insurer to void coverage for all insureds after only one named insured commits fraud.

Perla Villanueva and Mirtha Angarita were involved in a two-car automobile collision that resulted in both seeking treatment from a chiropractor. Villanueva filed a claim with Allstate Indemnity Company, her insurer, but falsely

told Allstate that she did not know the identity of the driver whose vehicle struck her vehicle from behind. Angarita, a passenger in Villanueva's vehicle at the time of the collision, also filed a claim under Villanueva's insurance policy. Angarita, however, told Allstate that, in fact, Villanueva had obtained the other driver's name and telephone number after the incident. Allstate denied coverage for both Villanueva and Angarita. Angarita then filed a lawsuit challenging Allstate's denial of coverage. The trial court ruled that Villanueva's fraud did not void coverage for Angarita, that Angarita was entitled to personal injury protection (PIP) coverage for injuries suffered in the collision, and that Allstate was required to defend Villanueva and indemnify her for any sums deemed owing to Angarita as a result of Angarita's tort action against Villanueva.

Because Washington's mandatory automobile insurance statutes establish a policy of protecting innocent persons on the roadways, we hold that fraud by one named insured does not void either first party coverage or coverage for third party claims where the insurer has not demonstrated prejudice. We further hold that under the terms of Allstate's insurance policy, Angarita did not void coverage through her own actions. Finally, we hold that Angarita is entitled to an award of appellate attorney fees with respect to her PIP claim.

I

Around noon on February 19, 2010, Villanueva was driving south on Interstate 5 from Edmonds toward downtown Seattle. Angarita was sitting in the passenger seat of Villanueva's car, and Villanueva's daughter Daniela was in the back seat. Just after the vehicle passed the Northgate exit, Villanueva's vehicle

- 2 -

was rear-ended by a vehicle driven by Jeffrey Butler. Both drivers pulled over to the shoulder of the road, after which Butler recommended that they get off the freeway before doing anything further. Villanueva and Butler both got back into their cars and pulled off at the next exit.

After pulling over near a high school, Villanueva and Angarita got out of Villanueva's vehicle. Villanueva inspected her vehicle for damage and spoke to Butler. Angarita was able to overhear the conversation, but did not understand most of what was said due to her limited familiarity with English. However, Angarita was able to discern that Butler gave Villanueva his name and telephone number. Angarita also wrote down Butler's license plate number on a slip of paper.[1] Angarita then telephoned her husband, an auto mechanic, to assist Villanueva with obtaining an estimate of the damage to her vehicle.

Sometime thereafter, Angarita visited Villanueva's chiropractor to seek treatment for pain stemming from the collision. The chiropractor's office submitted Angarita's bills to Allstate, Villanueva's insurer. On March 8, 2010, Villanueva's attorney contacted Allstate requesting Personal Injury Protection (PIP) and Uninsured Motorist (UIM) coverage stemming from the collision. On March 24, 2010, Villanueva's attorney informed Allstate that Angarita had also been injured in the collision and was seeking coverage.

Allstate subsequently conducted examinations under oath (EUO) of

---

[1] Angarita later testified that she did not remember what she did with the slip of paper, but that she did not give it to either Allstate or her attorney.

Villanueva and Angarita.[2] During her EUO, Villanueva testified that after she and Butler pulled off the highway,

> I turned on the first street to stop because I had been waiting for him because I had been watching to see if he was following us, but when I turned, he didn't turn. So I stayed there.
>
> I couldn't believe it. I thought he was going to come, so I waited. And I was waiting for him to show up somewhere, but he never -- he never arrived.
>
> So we stayed there, and then Julieth[3] and I were saying, "Wow, we didn't get any information from him or anything."

Months later, Villanueva admitted that this was a lie.

Immediately after her EUO, Villanueva sent Angarita a text message asking her to testify that Butler had left the scene of the accident. Angarita ignored the text message. Angarita testified truthfully during her EUO, although she did not mention the text message. At the end of the EUO, counsel for Allstate asked Angarita, "Is there anything that you want Allstate to know about the injury and the accident that we haven't spoken about, Ms. Angarita?" Angarita replied, "No. I think I have already said everything."

Villanueva's insurance policy contains the following "void-for-fraud" provision:

### Fraud or Misrepresentation

This entire policy is void from its inception if it was obtained or renewed through material misrepresentation, fraud or concealment of material fact made with the intent to deceive. This means that **Allstate** may not be liable for any claims or damages that would otherwise be covered.

---

[2] Villanueva's attorney also represented Angarita at the time, but withdrew shortly after the examinations under oath.

[3] Angarita is known to Villanueva by her middle name, Julieth.

> **We** may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

Based on that provision, Allstate denied all coverage for both Villanueva and Angarita.

Angarita filed suit against Villanueva, Butler, and Allstate.[4] With respect to Allstate, Angarita sought a declaratory judgment that she was entitled to coverage under Villanueva's policy. Allstate and Angarita both filed motions for partial summary judgment on the issue of insurance coverage. On March 1, 2013, the trial court granted Angarita's motion for partial summary judgment on PIP coverage. Allstate filed a motion for reconsideration of this order, which the trial court denied. In a separate order entered on March 11, 2013, the trial court ruled that Villanueva's "material misrepresentations voided Perla Villanueva's insurance policy, as to Villanueva only, and not as to [Angarita] or Third Parties," thus granting Allstate's summary judgment motion, in part, to deny Villanueva coverage.

Angarita moved for an award of attorney fees, pursuant to Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 811 P.2d 673 (1991). On April 4, 2013, the trial court awarded attorney fees to Angarita in the amount of $40,852.50.

Allstate sought discretionary review. On June 7, 2013, Angarita and Allstate entered into a trial court stipulation that the March 1, March 11, and April

---

[4] Neither Villanueva nor Butler is a party to this appeal.

4 orders were all final judgments pursuant to RAP 2.2 and CR 54(b). In light of this stipulation, our commissioner ruled that review would proceed as an appeal.

II

Allstate contends that the trial court erred by ruling that Angarita is entitled to PIP coverage under Villanueva's policy. This is so, it asserts, because fraudulent statements by any insured void the entire insurance policy as to all insureds. We disagree.

This court reviews the grant of summary judgment de novo. Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). In reviewing a summary judgment order, we view the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Dumont v. City of Seattle, 148 Wn. App. 850, 861, 200 P.3d 764 (2009).

The policy language at issue here states:

**Fraud or Misrepresentation**

This entire policy is void from its inception if it was obtained or renewed through material misrepresentation, fraud or concealment of material fact made with the intent to deceive. This means that **Allstate** may not be liable for any claims or damages that would otherwise be covered.

**We** may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

Allstate contends that a Division Two decision, Ki Sin Kim v. Allstate Insurance Company, Inc., 153 Wn. App. 339, 223 P.3d 1180 (2009), establishes that,

pursuant to the second paragraph of this clause, fraud by any insured voids the entire policy as to all insureds. Contrary to Allstate's assertion, Kim did not establish such a broad rule.

In that case, the named insured, Kim, was injured in an automobile collision and received treatment at a hospital emergency room for her injuries. Kim, 153 Wn. App. at 345. Kim filed a claim for medical expenses and lost wages, but misrepresented her ability to work after the incident. Kim, 153 Wn. App. at 345-50. Allstate denied her coverage based on a void-for-fraud provision identical to that at issue here. Kim, 153 Wn. App. at 350, 354. Thereafter, Kim filed suit for breach of contract. Kim, 153 Wn. App. at 351. The trial court denied Allstate's motion for summary judgment, and Division Two of this court granted discretionary review. Kim, 153 Wn. App. at 352.

Division Two upheld the denial of summary judgment, stating that

> Although the record clearly establishes that Kim made misrepresentations regarding her ability to work as well as the nature and extent of her injuries, in light of the equivocal language in Allstate's policy, a genuine issue of material fact remains as to the materiality of those misrepresentations with respect to Kim's emergency room visit.

Kim, 153 Wn. App. at 352. Because Allstate's policy stated that it "*may* not provide coverage," the court stated, the policy was "unclear under which circumstances it will choose to deny coverage and to what extent its obligation is relieved by misrepresentations." Kim, 153 Wn. App. at 360. Thus, Allstate was not entitled to automatically void the entire policy based on Kim's misrepresentations; rather, it had to prove that those misrepresentations were

*material.* Kim, 153 Wn. App. at 359. Materiality, not misrepresentation, was the factor on which Kim's coverage hinged.

> As Allstate correctly asserts, Kim does state, in dicta, that
>
> Washington courts have upheld "void for fraud" provisions where the policy expressly states that an insured is not entitled to coverage if that insured intentionally misrepresents or conceals a material fact regarding a claim and that such misrepresentations will void the entire policy.

153 Wn. App. at 354. However, this principle does not apply with equal force to all insurance policies. Washington law treats automobile insurance differently than other forms of insurance. The court in Kim, however, failed to recognize this. For the proposition that fraudulent misrepresentations will void an entire policy, Kim cited to Mutual of Enumclaw Insurance Co. v. Cox, 110 Wn.2d 643, 757 P.2d 499 (1988), Wickswat v. Safeco Insurance Co., 78 Wn. App. 958, 904 P.2d 767 (1995), and St. Paul Mercury Insurance Co. v. Salovich, 41 Wn. App. 652, 705 P.2d 812 (1985). None of these cases involved automobile insurance.[5] In fact, nowhere in the Kim opinion does the court discuss the public policies underlying mandatory automobile insurance coverage. Thus, we decline to apply Kim's overbroad observation that any fraudulent misrepresentation voids all insurance policies in their entirety.

In fact, public policy does not support the notion that fraud by any one insured will void an entire automobile insurance policy as to all insureds. The legislature has mandated that all drivers obtain automobile insurance coverage.

---

[5] Cox involved homeowners' insurance. 110 Wn.2d at 645. Wickswat involved personal property insurance. 78 Wn. App. at 960. Salovich involved fire insurance. 41 Wn. App. at 653.

RCW 46.30.020. The purpose of this law is "to require that all persons driving vehicles registered in this state satisfy the financial responsibility requirements of [chapter 46.30 RCW]" due to "the threat that uninsured drivers are to the people of the state." RCW 46.30.010. As our Supreme Court stated in Mendoza v. Rivera-Chavez, "[t]he objective of obtaining insurance coverage is to 'protect the public from the ravages of the negligent and reckless driver.'" 140 Wn.2d 659, 669-70, 999 P.2d 29 (2000) (quoting Touchette v. Nw. Mut. Ins. Co., 80 Wn.2d 327, 332, 494 P.2d 479 (1972)).

In Mendoza, our Supreme Court held that due to public policy, exclusions that are valid for other types of insurance may not be valid for automobile insurance. 140 Wn.2d at 663. The court stated that both the financial responsibility act (chapter 46.29 RCW) and the mandatory liability insurance act (chapter 46.30 RCW) are "aimed at protecting the public from motorists who are unable to compensate the victims of accidents." Mendoza, 140 Wn.2d at 663-64. With respect to chapter 46.29 RCW, the court held that "'the statute creates a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others.'" Mendoza, 140 Wn.2d at 665 (quoting Mutual of Enumclaw Ins. Co. v. Wiscomb, 97 Wn.2d 203, 206, 643 P.2d 441 (1982)). Insurers may not write their provisions in a way that would undermine this strong public policy. Mendoza, 140 Wn.2d at 662.

The absolutist stance advocated by Allstate is inconsistent with the public policy articulated by the legislature and the Mendoza court. Automobile

- 9 -

insurance protects not only the named insureds, but also innocent persons who use public roadways. If this purpose is to be fulfilled, then coverage for other insureds and third parties, such as passengers and pedestrians, cannot be so easily voidable. Indeed, in the absence of actual prejudice to the insurer, it would be contrary to the principles underlying the mandatory insurance requirement to void coverage for a third party's losses due to circumstances completely beyond the third party's control. As one court observed, in a case similar to this one, to "allow the insurer to declare a compulsory automobile liability insurance policy void *ab initio* after a third party is injured . . . would undermine the legislative purpose" underlying mandatory automobile insurance. Fisher v. N.J. Auto. Full Ins. Underwriting Ass'n By and Through Hanover Ins. Co., 224 N.J.Super. 552, 559, 540 A.2d 1344 (1988).

Our analysis is informed by our Supreme Court's pronouncements regarding a similar insurance provision: the cooperation clause. In Staples v. Allstate Ins. Co., 176 Wn.2d 404, 408-09, 295 P.3d 201 (2013), Allstate denied Staples' first party insurance claim after Staples failed to submit to an EUO. In Staples' appeal, Allstate contended that submission to an EUO was a condition precedent to its payment of benefits. Staples, 176 Wn.2d at 417. Our Supreme Court rejected Allstate's assertion, holding instead that "noncooperation does not absolve an insurer of liability unless the insurer was actually prejudiced." Staples, 176 Wn.2d at 417-18 (citing Tran v. State Farm Fire & Cas. Co., 136 Wn.2d 214, 228, 961 P.2d 358 (1998)). Requiring the insurer to demonstrate prejudice is vital to maintain the purpose of the insurance. As the Supreme Court

noted, the prejudice requirement "prevent[s] insurers from receiving windfalls at the expense of the public." Staples, 176 Wn.2d at 418; accord Or. Auto. Ins. Co. v. Salzberg, 85 Wn.2d 372, 377, 535 P.2d 816 (1975) (coverage for third party tort claim stemming from auto collision). Similarly, allowing Allstate to void coverage as to all insureds without showing that it was prejudiced as to all insureds would allow it to receive "windfalls at the expense of" innocent roadway users.

Allstate does not demonstrate that Villanueva's fraudulent statements prejudiced it in processing Angarita's claim for PIP benefits. In order to process Angarita's claim, Allstate did not need to know who caused the collision: "PIP benefits are not fault based." Sherry v. Fin. Indem. Co., 160 Wn.2d 611, 624, 160 P.3d 31 (2007). Rather, what Allstate needed to know was the nature and extent of the injuries Angarita suffered as a result of the collision. See Sherry, 160 Wn.2d at 624 ("Generally speaking, people purchase PIP coverage to cover the immediate costs of an accident, such as medical expenses and loss of income."). Allstate received Angarita's initial request for coverage directly from her medical provider. Furthermore, Angarita testified truthfully during her EUO about the details of the collision and the nature of her injuries. While Villanueva's fraud may have prejudiced Allstate with respect to Villanueva's claim, Allstate has not shown that it was prejudiced with respect to Angarita's claim. The facts presented herein simply do not support a conclusion that fraud by the named insured prejudiced Allstate as to all insureds.

Although this issue can be resolved solely on the basis of the authorities

previously cited, we address Angarita's contention that the provisions of chapter 46.29 RCW further belie Allstate's contention that fraud by any insured voids the entire policy.[6] Chapter 46.29 RCW contains a provision that states:

> The liability of the insurance carrier with respect to the insurance required by this chapter becomes absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his or her behalf and no violation of said policy defeats or voids said policy.

RCW 46.29.490(6)(a). Under the plain language of this statute, Allstate cannot deny Angarita coverage on the basis of Villanueva's fraud.

Moreover, the policy behind this statute also weighs in favor of Angarita. In Tibbs v. Johnson, 30 Wn. App. 107, 632 P.2d 904 (1981), the plaintiff was the driver of a vehicle involved in a collision with the insured's vehicle. The insurer attempted to assert noncooperation by the insured as a defense to the plaintiff's action for coverage. Tibbs, 30 Wn. App. at 108. However, the court held that RCW 46.29.490 precluded the insurer from doing so. Tibbs, 30 Wn. App. at 109. The policy behind the statute, the court held, was to "'to give monetary protection

---

[6] Angarita asserts that chapter 46.29 RCW applies to Villanueva's policy, and cited to the statute in her trial court briefing. Allstate, in its trial court response, did not contend that Villanueva's policy was not subject to the terms of chapter 46.29 RCW. Furthermore, Allstate, as the appellant, is responsible for perfecting the record on appeal. However, Allstate has not provided us with a complete copy of the policy at issue. Thus, from the record before us, we are unable to independently determine whether Villanueva's policy is in fact subject to the terms of chapter 46.29 RCW.

On appeal, Allstate has not assigned error to the trial court's consideration of chapter 46.29 RCW. Neither did it in any way address the issue in its opening brief. In her appellate response brief, Angarita again contends that chapter 46.29 RCW applies. Allstate does not assert in its reply brief that the provisions of this statute do not apply to the policy. Under these circumstances, we take the issues as litigated by the parties. Accordingly, we operate under the assumption that chapter 46.29 RCW applies to the policy at issue.

*to that ever changing and tragically large group of persons who, while lawfully using the highways themselves, suffer serious injury through the negligent use of those highways by others.'"* Tibbs, 30 Wn. App. at 110-11 (quoting LaPoint v. Richards, 66 Wn.2d 585, 590, 403 P.2d 889 (1965)). The court further stated that RCW 46.29.490 "indicate[s] a legislative intent that the public interest in protecting injured persons on the highway is paramount and cannot be undermined by contract." Tibbs, 30 Wn. App. at 111. Thus, the court held, "to the extent the cooperation clause in [the insurance] policy would provide less protection than the minimum amount required by the act, it cannot be used as a defense. To hold otherwise would defeat the legislated public policy implicit in the financial responsibility law." Tibbs, 30 Wn. App. at 113 (footnote and citations omitted).

Allstate's contention herein is similar to the insurer's argument in Tibbs. For the reasons articulated in Tibbs, that contention must fail.

The trial court did not err by holding that Angarita is entitled to PIP coverage under Villanueva's policy.

III

Allstate further contends that the trial court erred in granting its motion for summary judgment by denying coverage only as to Villanueva's claims.[7] This is

---

[7] Angarita and Allstate entered into a trial court stipulation designed to satisfy RAP 2.2 and CR 54(b). This stipulation listed the orders subject to prompt appeal: the Order Granting Plaintiff's Cross Motion for Partial Summary Judgment, entered on March 1, 2013; the Order Granting Defendant Allstate's Motion for Partial Summary Judgment (as to Defendant Villanueva only), entered on March 11, 2013; and the Order Granting Plaintiff's Motion for Attorney Fees for Prevailing on PIP Coverage, entered on April 4, 2103. Villanueva's coverage for Angarita's third party negligence claim against her was addressed in the March 11 order.

so, it again asserts, because fraudulent statements by any insured void the entire insurance policy as to all claimants or claims. Allstate's absolutist contention fails for many of the same reasons as it failed with respect to PIP coverage.

As stated previously, Kim does not support the broad proposition that Allstate advocates. The controlling factor in Kim was materiality, not the mere fact of misrepresentation.[8] For the reasons articulated above, Allstate's reliance on Kim is unavailing.

Again, our Supreme Court's pronouncements regarding a cooperation clause inform our analysis. Salzberg is a remarkably similar case to the present one. In Salzberg, Simpson was injured while riding as a passenger in a vehicle driven by Salzberg. 85 Wn.2d at 373. After the collision, Salzberg falsely told his insurer that his vehicle had been stolen. Salzberg, 85 Wn.2d at 373. The insurer learned of Salzberg's fraud when Simpson filed suit against Salzberg, seeking compensation for his injuries. Salzberg, 85 Wn.2d at 373-74. Thereafter, the insurer sought a declaratory judgment that it did not have a duty to defend Salzberg based on the policy's cooperation clause. Salzberg, 85 Wn.2d at 373-74.

In rejecting the insurer's argument, our Supreme Court noted that

---

Villanueva is not a party to this appeal; thus, her interests are not directly at issue here. However, on appeal, Allstate assigns error to the March 11 order and argues that Villanueva's fraud relieved Allstate of its duty to defend Villanueva or to indemnify Villanueva for amounts she was obligated to pay as a result of Angarita's tort claim against her. Throughout this appeal, Angarita's standing to assert Allstate's duty to defend has never been questioned by Allstate. Angarita (not Villanueva) was a party to the trial court stipulation. Angarita responded to Allstate's contentions in her appellate brief, to which Allstate replied on the merits. Thus, we take the issue as it has been framed by the parties and do not opine on any concerns regarding standing.

[8] Additionally, Kim does not address coverage for third party claims.

insurance policies, in fact, are simply unlike traditional contracts, *i.e.*, they are not purely private affairs but abound with public policy considerations, one of which is that the risk-spreading theory of such policies should operate to afford to affected members of the public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insurer.

Salzberg, 85 Wn.2d at 376-77. The Supreme Court held that "the insurer [must] demonstrate that it was prejudiced by the insured's actions before the cooperation clause will be considered breached so as to relieve the insurer from its obligations under the policy." Salzberg, 85 Wn.2d at 376; accord Staples, 176 Wn.2d at 417-18. The reason for this holding, the court stated, was that

[the aforementioned] public policy consideration would be diminished, discounted, or denied if the insurer were relieved of its responsibilities although it is not prejudiced by the insured's actions or conduct in regard to its investigation or presentation and defense of the tort case. Such relief, absent a showing of prejudice, would be tantamount to a questionable windfall for the insurer at the expense of the public.

Salzberg, 85 Wn.2d at 377.

Similarly, allowing Allstate to void coverage for a third party claim without a showing of prejudice would allow it to receive a windfall at the expense of innocent roadway users such as Angarita. Because Allstate did not demonstrate prejudice as to its ability to defend against Angarita's third party claim, the trial court did not err by granting Allstate's motion for summary judgment solely as to Villanueva's claims.[9,10]

---

[9] As with the PIP coverage issue addressed in section II, the provisions of chapter 46.29 RCW and the Tibbs decision also support affirmance of the trial court's ruling.

[10] Because we uphold the trial court's determination on coverage for Angarita's third party claim, we do not address whether Angarita was entitled to UIM coverage.

IV

Allstate next contends that the trial court erred by ruling that Angarita did not conceal material information such that her actions independently voided the policy. Angarita's failure to discuss, at the EUO, Villanueva's text message to her (received immediately prior to the EUO) and Angarita's failure to provide information that would have identified Butler as the other driver were, according to Allstate, material misrepresentations as a matter of law. However, pursuant to the policy at issue, in order to deny coverage, Allstate needed to prove that Angarita engaged in fraud, not simply misrepresentation. Allstate's contention is therefore not well-taken.

Construction of an insurance policy is a question of law and reviewed de novo. Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 693, 186 P.3d 1188 (2008). "The courts liberally construe insurance policies to provide coverage wherever possible." Bordeaux, 145 Wn. App. at 694. Courts examine the policy "to determine whether under the plain meaning of the contract there is coverage." Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998). "Terms undefined by the insurance contract should be given their ordinary and common meaning, not their technical, legal meaning." Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997).

> Ambiguities in the policy are construed against the drafter-insurer. Queen City Farms[, Inc. v. Cent. Nat'l Ins. Co. of Omaha], 126 Wn.2d [50,] 68[, 882 P.2d 703, 891 P.2d 718 (1994)] (citing Greer v. Nw. Nat'l Ins. Co., 109 Wn.2d 191, 201, 743 P.2d 1244 (1987)). Because "[e]xclusions from insurance coverage are contrary to the fundamental protective purpose of insurance," we construe exclusions strictly against the insurer. State Farm Fire & Cas. Co.

- 16 -

v. Ham & Rye, LLC, 142 Wn. App. 6, 13, 174 P.3d 1175 (2007)
(citing Stuart v. Am. States Ins. Co., 134 Wn.2d 814, 818-19, 953
P.2d 462 (1998)).

Vision One, LLC v. Phila. Indem. Ins. Co., 174 Wn.2d 501, 512, 276 P.3d 300

(2012). Insurance contracts should be interpreted from the point of view of the

average person purchasing insurance. Holden v. Farmers Ins. Co. of Wash., 169

Wn.2d 750, 756, 239 P.3d 344 (2010).

> The exclusion clause at issue reads:
>
> This entire policy is void from its inception if it was obtained or renewed through material misrepresentation, fraud or concealment of material fact made with the intent to deceive. This means that **Allstate** may not be liable for any claims or damages that would otherwise be covered.
>
> **We** may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

The clause clearly includes two separate paragraphs. As the average person

would read it, these two paragraphs are mutually exclusive. By using two

mutually exclusive paragraphs, the policy provides two different bases for voiding

coverage, depending on when the relevant misconduct occurred.

Neither party asserts that Villanueva engaged in any fraud, concealment,

or misrepresentation when she obtained or renewed her policy. The first

paragraph of the exclusion clause is thus inapplicable.

Therefore, only the second paragraph of the clause is applicable. As an

average person would read this paragraph, Allstate can only deny coverage on

the basis of "fraudulent statements" and "fraudulent conduct."[11] In determining that Angarita was entitled to PIP coverage, the trial court ruled that there was no evidence that she had made fraudulent statements or engaged in fraudulent conduct. The trial court did not, as Allstate contends, find anything with respect to "misrepresentation" or "concealment."

In Brown v. Underwriters at Lloyd's, 53 Wn.2d 142, 332 P.2d 228 (1958), our Supreme Court construed the word "fraudulent" as used in an insurance contract. In that case, the insurance policy contained a clause precluding coverage for any action "(c) brought about or contributed to by the dishonest, fraudulent, criminal or malicious act or omission of the Assured or any employee of the Assured." Brown, 53 Wn.2d at 143. "The issue [was] whether a misrepresentation, made by the appellant to induce the sale, which was in fact false, but believed by him to be true, [was] within the exclusionary clause of the policy or not." Brown, 53 Wn.2d at 145. The court held that "fraudulent" did not simply mean "false." Brown, 53 Wn.2d at 146. Citing various dictionaries and out-of-state authority, the court emphasized that in order for an act or statement to be fraudulent, it must be intentional. For example, Brown states, "'Fraud

---

[11] Allstate contends that pursuant to Onyon v. Truck Ins. Exch., 859 F. Supp. 1338 (W.D. Wash. 1994), concealments and misrepresentations, regardless of when they occurred, will automatically void the policy as to all insureds. Allstate's reliance on Onyon is unavailing. The insurance policy in question in that case stated,

> This entire policy shall be void in the event either or both of the following:
> (a) if you have concealed or misrepresented, in writing or otherwise, any material facts or circumstances concerning this insurance.
> (b) if you shall make any attempt to defraud us, either before or after a loss.

Onyon, 859 F. Supp. at 1340. Under the plain language of that policy, concealment or misrepresentation was relevant regardless of when it occurred. However, under the plain language of Allstate's policy, concealment or misrepresentation is relevant only if done in connection with obtaining or renewing the policy. Onyon is thus inapposite.

cannot exist, as a matter of fact, where the intent to deceive does not exist,'" and, "'As distinguished from negligence, [fraud] is always positive, intentional.'" 53 Wn.2d at 146-47 (quoting Tilghman v. West, 43 N.C. 183, 184 (1851); BLACK'S LAW DICTIONARY 788, 789 (4th ed.)). Thus, the court held, the words "fraudulent" and "act," "[w]hen used in this connection in insurance policies, . . . import acts which show a want of integrity." Brown, 53 Wn.2d at 152. It followed therefrom that the insured's negligent misrepresentation did not fall within the exclusionary clause. Brown, 53 Wn.2d at 154.

Brown makes it clear that in order to deny coverage for fraud, the insurer must show that a false act or statement was intentional. See also Kim, 153 Wn. App. at 355 ("[T]he insurance company must demonstrate that the insured knowingly made the untrue representations and that, in making those representations, the applicant intended to deceive the company."). In this case, Allstate presented no evidence that Angarita intentionally made a false statement or intended to deceive the insurer. Allstate does not dispute that Angarita described the collision truthfully and accurately. Rather, it contends that Angarita's answer to the question "Is there anything that you want Allstate to know about the injury and the accident that we haven't spoken about, Ms. Angarita?" was intentionally untruthful. Angarita answered this question, "No. I think I have already said everything." By itself, this statement, a response to a broad, unfocused question, amounts to no more than a lapse in memory or, alternatively, a literal truth. A lapse in memory is not fraud. Brown, 53 Wn.2d at 153 n.7. Allstate presented no other evidence to show that this statement was

intentionally false.[12] Because Allstate presented no evidence that Angarita committed fraud, the trial court properly ruled that she was entitled to coverage.

V

Allstate next contends that the trial court erred by awarding attorney fees to Angarita. This is so, it asserts, because Angarita made the request with "unclean hands." This contention was raised for the first time on appeal. We therefore decline to address it. See RAP 2.5(a).

VI

Angarita requests an award of attorney fees on appeal.[13] Pursuant to RAP 18.1, a party may be awarded attorney fees and costs on appeal "if applicable law grants to a party the right to recover reasonable attorney fees or expenses." Olympic Steamship holds that "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." 117 Wn.2d at 53. The award is available for first party insurance claims, but not for third party claims where the insured remains the real party at interest. Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co., 176 Wn. App. 185, 208-09, 312 P.3d 976 (2013). The PIP coverage dispute in this case is of the type contemplated by Olympic Steamship. Because Angarita was entitled to an attorney fee award in conjunction with her PIP coverage claim in the trial court and has prevailed on this issue on appeal,

_____

[12] Whether Angarita's answer amounted to concealment is a separate question that, under the policy language, is irrelevant for purposes of this appeal.

[13] Additionally, Allstate requests costs on appeal. Pursuant to RAP 14.2, costs are awardable "to the party that substantially prevails on review." Allstate has not prevailed in this court. We therefore decline its request.

No. 70201-7-I/21

she is entitled to an award of attorney fees in this court in conjunction with her

PIP coverage claim. Upon compliance with RAP 18.1, a commissioner of this

court will enter an appropriate order.

Affirmed.

We concur:

_____
Cox, J.

_____
Dwyer, J.

_____
Becker, J.