Opinion by Judge FERNANDEZ; Dissent by Judge BERZON.
OPINION
FERNANDEZ, Circuit Judge:
Cion Adonis Peralta appeals the district court’s judgment as a matter of law in favor of Dr. Thaddeus Dillard and Dr. Junaid Fitter and its judgment following a jury verdict in favor of Dr. Sheldon Brooks, in Peralta’s 42 U.S.C. § 1983 action claiming that they were deliberately indifferent to his medical needs related to dental care. In this opinion, we decide whether the district court erred when it instructed the jury on the question of whether Dr. Brooks could be held responsible for failing to provide services when he lacked resources.[1] We affirm.
BACKGROUND
Peralta was incarcerated at various California state prisons, prior to January 24, 2004, when he arrived at California State Prison, Los Angeles County (“Lancaster”). He remained in Lancaster until February 7, 2006. While he was there, Dr. Brooks was a staff dentist.
Within three days of his arrival at Lancaster, Peralta submitted oral and written requests for dental care. He asserted that he had cavities and bleeding gums and that he needed to receive treatment for pain. Having received no immediate response, Peralta filed a Form 602 Inmate Appeal on July 15, 2004. He stated that he had infected teeth, cavities, and severe pain, but he had not been seen by a dentist despite having submitted requests. The initial informal response by the medical appeals analyst, dated August 13, 2004, indicated that the appeal was partially granted; he was placed on a waiting list to see a dentist.
The wait for routine care could take up to twelve months, but emergency dental cases were given a higher priority. The length of the waiting list, as well as the limited amount of time that staff dentists could ultimately spend with patients, was *1126 due to staff shortages at Lancaster during 2004-05 and to other constraints on the dentists’ time. Moreover, while Dr. Brooks and the other doctors tried to address the shortage through various means, including requests for more resources and changing staff schedules to allow staff to see more patients, they had no control over the staffing budget, which was set at the state level.
On August 23, 2004, Peralta formally appealed the decision by the medical appeals analyst and stated that waiting for a number of months was inadequate. In response and pursuant to the procedure for Form 602 appeals, Dr. Brooks interviewed Peralta on October 15, 2004. The dental progress notes indicate that Dr. Brooks had one x-ray taken, reviewed Per-alta’s Form 602 and his health history form, and performed a clinical examination of tooth #2. He found severe bone loss and mobility and assessed the tooth as a candidate for extraction; ' he also prescribed twelve ibuprofen tablets and planned to extract tooth # 2 on the next visit. He did not, however, examine Peral-ta further for other cavities or infections.
After that interview, Dr. Brooks prepared and signed a first-level appeal response. It stated that the appeal was partially granted. It also stated that Dr. Brooks had prescribed pain medication and that Peralta would be scheduled for an extraction. It noted that there was a waiting list for dental procedures. A second staff dentist, Dr. Kumar, also signed the Form 602 and the first level appeal response.
On October 21, 2004, Peralta sought a second level review of his Form 602 Appeal. He stated that he was not examined, but only asked which tooth hurt most and was given four days’ worth of Motrin although he had existing dental needs or pain. On January 25, 2005, while the review was still pending, Peralta saw Dr. Brooks a second time in order to have tooth # 2 extracted. During the appointment, Dr. Brooks explained that the tooth had no cavity and did not need to be extracted, but that he could have it extracted if it was causing him pain. Peralta decided not to have the tooth pulled at that time. Dr. Brooks did obtain x-rays, reviewed Peralta’s health history form, and performed an examination, assessment and consultation. He also prescribed twelve ibuprofen tablets and, prophylactically, tetracycline for infection.
Peralta saw Dr. Brooks the third and last time on December 23, 2005. At that time, Dr. Brooks cleaned Peralta’s teeth; Dr. Brooks testified that the time for cleaning teeth of a patient with the amount of plaque and calculus build up that Peral-ta had would take twenty to thirty minutes. In February 2006, Peralta was transferred to Mule Creek State Prison.
This case proceeded to trial on May 5, 2009. After judgment as a matter of law was granted in favor of Dr. Dillard and Dr. Fitter, the case continued as to Dr. Brooks alone and was presented to the jury, which returned a special verdict in his favor. The jury determined that Dr. Brooks did not act with deliberate indifference to Per-alta’s severe dental needs and thereby cause him harm. The district court issued judgment in accordance with that special verdict on May 26, 2009. This appeal followed.
JURISDICTION AND STANDARD OF REVIEW
The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. We have jurisdiction pursuant to 28 U.S.C. § 1291.
We review the issue of whether a jury instruction misstates the law de novo. See Clem v. Lomeli, 566 F.3d 1177, 1180-81 (9th Cir.2009).
*1127 DISCUSSION
Peralta’s sole attack on the judgment in favor of Dr. Brooks is based upon Peralta’s assertion that the district court erred when it gave the following instruction to the jury:
Evidence has been presented during the trial regarding dental staffing levels and the availability of resources at the Lancaster correctional facility where Plaintiff Peralta was incarcerated during the time of his alleged injuries in this case.
Whether a dentist or a doctor met his duties to Plaintiff Peralta under the Eighth Amendment must be considered in the context of the personnel, financial, and other resources available to him or her or which he or she could reasonably obtain. A doctor or dentist is not responsible for services which he or she could not render or cause to be rendered because the necessary personnel, financial, and other resources were not available to him or her or which he or she could not reasonably obtain.
Peralta does not complain about the precise wording of the instruction; rather, he asserts that our cases preclude consideration of available resources when an individual is sued for violating a prisoner’s Eighth Amendment[2] rights due to deliberate indifference to that person’s serious medical needs.[3] To sustain his deliberate indifference claim, Peralta had to meet the following test:
First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner’s condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant’s response to the need was deliberately indifferent. This second prong—defendant’s response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner’s pain or possible medical need and (b) harm caused by the indifference.
Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006) (citations and internal quotation marks omitted); see also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir.2004). Even when officials “actually knew of a substantial risk to inmate health or safety [they] may be found free from liability if they responded reasonably to the risk....” Farmer v. Brennan, 511 U.S. 825, 844, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). But what is (and should be) the law when those in charge of funding refuse to give the providers of prisoner care sufficient funds to allow them to afford the level of care that prisoners need? For example, suppose, as here, the established standard is 1 dentist for every 950 inmates, but the dentist must work at a 1 dentist for every 4200-4500 inmates ratio. Is the individual dentist to be held responsible because he cannot give proper care to the inmates, that is, he cannot reasonably respond to the risk of harm that those underserved inmates face when dental problems occur or are about to occur? We think not. As we noted over two decades ago in the context of a prisoner’s stabbing, it is one thing to seek injunctive relief against state officials for the general conditions at a facility, and an entirely different thing when a prisoner seeks to mulct an individual prison employee with damages. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988). In the latter instance, we cannot simply react to deplorable conditions at the prison, but *1128 must “take a very individualized approach which accounts for the duties, discretion, and means of each defendant.” Id. at 633— 34; see also Clement v. Gomez, 298 F.3d 898, 905 n. 4 (9th Cir.2002). That is as it should be. The point was put most eloquently by the Eleventh Circuit Court of Appeals thirty years ago. See Williams v. Bennett, 689 F.2d 1370 (11th Cir.1982).
In Williams, a prison had been run in a manner that placed prisoners at a severe risk of violence. Id. at 1375. A prisoner brought an action against a number of prison officials, who had not given him reasonable protection; he accused them of deliberate indifference. Id. at 1374-75. However, the problems at the prison were said to be largely caused by a lack of funding. Id. at 1387. The trial court had instructed the jury in a manner similar to the instruction here. Id. The court of appeals recognized that lack of funds will not generally defeat claims for constitutional violations. Id. However, its response to the attack on the instruction was:
In contrast [to considering injunctive relief], however, we are called upon to consider the liability of individual state employees for injuries suffered as a result of the unconstitutional conditions. Unlike the state, an individual defendant generally has neither the power to operate nor close down a prison. Moreover, we refuse to adopt the position that an employee who attempts to accommodate the constitutional rights of prisoners in his charge, within the financial limitations imposed, should, instead, resign from his position because of the realization that full compliance is impossible in the absence of adequate funding. Indeed, the corrections official who walks away could be said to act with greater indifference than those who remain and attempt to work within the system.
In essence, the availability of funds, or lack thereof, is relevant in determining whether the individual is capable of committing the constitutional wrong alleged. Although each prison employee owes a duty to the inmates affected by his function, that duty must be measured by the scope of his discretion and the extent of his authority. For example, an individual defendant should be able to demonstrate that he had insufficient authority to correct the constitutional deficiencies in the prison. He also should be permitted to demonstrate that he did not have the resources necessary to correct that deficiency.
Id. at 1388 (citations omitted); see also Lopez v. LeMaster, 172 F.3d 756, 762 & n. 4 (10th Cir.1999); Anderson v. City of Atlanta, 778 F.2d 678, 680, 686-87 (11th Cir.1985). Just so.
The above does not, of course, suggest that a governmental entity cannot be held liable in damages for its own wrongdoing when it incarcerates individuals, but refuses to provide the proper funds. That is not the issue before us. Nor do we suggest that injunctive or declaratory relief can be turned aside simply because necessary resources have not been made available. See, e.g., Jones v. Johnson, 781 F.2d 769, 770, 772 (9th Cir.1986) (dismissal of a complaint for damages and injunctive relief was overturned on the basis that a cause of action had been stated; however, the question of individual responsibility and of damages as such was not taken up); Spain v. Procunier, 600 F.2d 189, 200 (9th Cir.1979) (holding injunctive relief proper despite assertions about the cost of proper facilities). Leer, 844 F.2d at 633 (distinguishing between injunctive relief and damages); Williams, 689 F.2d at 1388 (same).
Thus, a proper standard must take account of the “duties, discretion and means” available. Leer, 844 F.2d at 633. The instruction in question here did just *1129 that. It did not give a free pass to those who could, but did not bother to, give a constitutional level of care to an inmate. Rather, it, in effect, stated that if the employee involved—here Dr. Brooks— could not “render or cause to be rendered” the needed services because of a lack of resources that he could not cure, he also could not be individually hable.
CONCLUSION
We see no reason to impose an injustice upon employees of prison systems in an attempt to avoid injustices to inmates. Nor do we see any reason to drive prison employees out of positions where they can at least try to ameliorate afflictions, even though they have no apotropaion that will effect cures in the absence of sufficient resources. To do so would be to provide an iatrogenic remedy. Thus, we hold that the principle contained in the instruction given in this case was a proper one.
AFFIRMED.

. We address Peralta's claims against Dr. Dillard and Dr. Fitter in an unpublished memorandum disposition filed this date.

. U.S. Const, amend. VIII.

. Therefore, it is the principle we address here; we do not intend to induce the reader to see the instruction as an all purpose form or, for that matter, the very best possible wording for an instruction of this type.