
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEBORAH MCALPINE, Individually and as administrator of the estate of Kenneth McAlpine,

          Plaintiff - Appellant,

  v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, a foreign insurer,

          Defendant - Appellee.

No. 12-35159

D.C. No. 3:10-cv-05630-BHS

MEMORANDUM[*]

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted May 10, 2013
Seattle, Washington

Before: HAWKINS and NGUYEN, Circuit Judges, and SELNA, District Judge.[**]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable James V. Selna, District Judge for the U.S. District Court for the Central District of California, sitting by designation.

Deborah McAlpine appeals the district court's judgment, following a jury trial, in favor of her property insurer, State Farm Fire and Casualty Insurance Company. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, vacate in part, and remand for further proceedings.

**1.**     The district court erred by instructing on State Farm's non-cooperation defense. Although Washington has never recognized the "mend the hold" doctrine advanced by McAlpine, *see Ohio & Miss. Ry. v. McCarthy*, 96 U.S. 258, 267–68 (1877) (holding that a party is estopped from changing its reason for the conduct at issue once litigation has begun), its doctrines of waiver and estoppel are functionally similar. *See Polson Logging Co. v. Neumeyer*, 229 F. 705, 708 (9th Cir. 1916) (citing *Zeimantz v. Blake*, 80 P. 822 (Wash. 1905) (per curiam)); *Bosko v. Pitts & Still, Inc.*, 454 P.2d 229, 234 (Wash. 1969) (articulating "the general rule that if an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds").

In the letter informing McAlpine that it was denying coverage under her policy, State Farm did not raise McAlpine's alleged failure to cooperate as a reason

2

for its decision.[1]  State Farm's claim representative in this matter, Emma Molinar, confirmed in a deposition that the sole basis for State Farm's denial of coverage was McAlpine's alleged misrepresentations and concealment, *not* non-cooperation. Because State Farm did not raise non-cooperation as a defense until the last minute, McAlpine was not adequately prepared to challenge it at trial.  Under these circumstances, State Farm should have been estopped from relying on non-cooperation as a defense to McAlpine's breach-of-contract claim.

Even if State Farm's delay did not prejudice McAlpine's ability at trial to show that she cooperated in all material respects, State Farm unequivocally disclaimed a non-cooperation defense when it conceded that "its contractual defenses are limited to misrepresentation and concealment."  Thus, State Farm

---

[1] Three months before denying coverage, State Farm stated in its answer to the amended complaint that McAlpine "has not complied with the terms and conditions of the policy," thereby prejudicing its "ability to complete its coverage investigation."  Noncompliance with policy terms is not necessarily the same thing as non-cooperation with a claim investigation, because the latter is more narrow. *Cf. Staples v. Allstate Ins. Co.*, 295 P.3d 201, 205 (Wash. 2013) (explaining that cooperation clauses generally require the insured to cooperate with the insurer's handling of claims); *Canron, Inc. v. Fed. Ins. Co.*, 918 P.2d 937, 940 (Wash. Ct. App. 1996) (discussing noncompliance with policy provisions and focusing on failure of insured to notify insurer of property damage caused by an "occurrence").  It also is not clear which of the policy's numerous terms and conditions State Farm contended that McAlpine had violated.  Moreover, because State Farm asserted McAlpine's noncompliance with policy provisions before it denied her claim, this defense obviously related to McAlpine's allegation regarding the *speed* with which State Farm had investigated her claim rather than its *denial* of her claim.

expressly waived its reliance on a non-cooperation defense, *see Clark v. Falling*, 965 P.2d 644, 648 (Wash. Ct. App. 1998), and the trial court should not have instructed on it.

The trial court's error in instructing on the non-cooperation defense appears more likely than not to have affected the result because the jury found against State Farm on the sole ground for nonperformance that State Farm was entitled to assert—McAlpine's alleged misrepresentations and concealment. Therefore, we set aside the jury verdict and remand for a new trial on McAlpine's claim for business personal property coverage. *See Peralta v. Dillard*, 704 F.3d 1124, 1135 (9th Cir. 2013).

**2.** We affirm the district court's dismissal of McAlpine's claim for loss of business income. Although McAlpine demonstrated that she had ongoing expenses, such as mortgage payments, State Farm was entitled to offset these expenses by the amount of her net business loss. Because McAlpine was unable to produce evidence that would reliably establish the magnitude of Le Bistro's losses, it would be speculative whether they exceeded her ongoing expenses—i.e., whether she sustained any compensable damages from State Farm's refusal to pay lost business income. This was fatal to her claim. *See Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 146 (Wash. 1990) ("[T]he fact of loss must be established with

4

sufficient certainty to provide a reasonable basis for estimating that loss." (internal quotation marks omitted)).

3.      We also affirm the district court's dismissal of McAlpine's claim for coverage of the building structure. Harborstone Credit Union, the mortgagee on the property, was entitled to collect the insurance proceeds from the building coverage policy in an amount up to the policy limit. Harborstone had no obligation to litigate to recover these funds such that a court would decide the amount, if any, that was due. Rather, Harborstone was entitled to settle with State Farm for an amount less than the building structure policy limit to avoid the cost and risk of litigation. *Cf. Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 126 (Wash. 2000) ("[T]he insurers that chose to settle . . received far more than a simple release of liability . . . . Rather these companies also purchased certainty by avoiding the risks of an adverse trial outcome—not to mention forgoing the expenses associated with a lengthy trial and appeal."). In either case, McAlpine would not have been entitled to these proceeds because her debt to Harborstone exceeded the coverage limit.

McAlpine argues that Harborstone could have settled on more favorable terms. Any claim that Harborstone settled for an unreasonably low amount lies against Harborstone rather than State Farm. To the extent that Harborstone's

5

settlement with State Farm was unreasonably low—an issue that we do not address—the appropriate remedy is to reduce McAlpine's remaining mortgage debt to Harborstone commensurately. *Cf., e.g.*, *Diaz v. State*, 285 P.3d 873, 878 (Wash. 2012).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Each party shall bear its own costs on appeal.