HURWITZ, Circuit Judge, with whom RAWLINSON, M. SMITH, and CHRISTEN, Circuit Judges, join, and with whom BYBEE, Circuit Judge, joins as to Parts I and II,
dissenting in part and concurring in part:
The majority opinion has something of a seductive quality. It pits Peralta, a jailhouse lawyer, against Dr. Brooks, an overworked dentist. The case involves dental care, an amenity not available to large portions of the law-abiding population. Given the majority’s characterization of the dramatis personae and the issue, it is not difficult to predict the result.
But, of course, this case is really not about just Peralta and Dr. Brooks. Nor is it about an alleged constitutional right to dental care.[1] Rather, this case is before the en banc court because it involves, in the words of Federal Rule of Appellate Procedure 35(a)(2), a “question of exceptional importance.” That question is whether a state can shield itself from the consequences of denying constitutionally required medical treatment to those it incarcerates by deliberately choosing not to appropriate sufficient funds for that treatment.
The majority effectively holds that a state can first choose to underfund the medical treatment of its wards, and then excuse the Eighth Amendment violations *1097 caused by the underfunding. Today’s decision thus not only forecloses relief to inmates who suffer cruel and unusual punishment, but also encourages future constitutional violations. I respectfully dissent.
I
Peralta asserted Eighth Amendment claims against three defendants — Dr. Brooks (the treating dentist), Dr. Dillard (the Chief Dental Officer), and Dr. Fitter (the Chief Medical Officer). Because only the claim against Dr. Brooks went to the jury, the instruction to consider the financial resources made available to the prison system by the State of California applies to that claim alone. But, the history of the claims against the other two defendants is nonetheless instructive.
The district court determined that Dr. Fitter had qualified immunity, and directed a judgment in his favor; the court did not reach the issue of qualified immunity as to Dr. Dillard, finding that Peralta had not established a prima facie case of deliberate indifference and also issuing a judgment as a matter of law on his behalf. Dr. Brooks, however, did not assert qualified immunity. Thus, the “resources” jury instruction only comes into play in cases in which qualified immunity has not been granted and in which the district court finds sufficient evidence of an Eighth Amendment violation to submit the claim to a jury. See Maj. Op. at 1084 (“We have no quarrel with the dissenters’ view that Peralta may have suffered an Eighth Amendment violation.”). The majority thus holds that even if a plaintiff makes out a prima facie Eighth Amendment violation, an agent of the state may nonetheless justify cruel and unusual punishment by claiming that the state itself caused the problem by withholding the resources necessary to provide appropriate medical care.
This turns the law upside down. A state official inflicts cruel and unusual punishment by exhibiting deliberate indifference to a prisoner’s serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference in turn requires subjective culpability — the official must know of and disregard an excessive risk to inmate health. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although the Supreme Court has left open whether fiscal constraints are a defense to an Eighth Amendment claim, in doing so Justice Scalia aptly noted that “it is hard to understand how” funding issues “could control the meaning of ‘cruel and unusual punishments’ in the Eighth Amendment.” Wilson v. Seiter, 501 U.S. 294, 301, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Four justices went even further, criticizing the Wilson majority for even “leaving] open the possibility, for example, that prison officials will be able to defeat a § 1983 action challenging inhumane prison conditions simply by showing that the conditions are caused by insufficient funding from the state legislature rather than by any deliberate indifference on the part of the prison officials.” Id. at 311, 111 S.Ct. 2321 (White, J., concurring in the judgment).
Until today, the law of this Circuit was that “budgetary constraints ... do not justify cruel and unusual punishment.” Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986); accord Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir.2012). The majority overrules Jones and Snow and holds that an official does not act with deliberate indifference if he (a) lacks the “resources” to treat an inmate and (b) is sued for money damages. Maj. Op. at 1082-84. But, the Eighth Amendment prohibits all cruel and unusual punishments, not simply those inflicted by officials of states with *1098 well-funded prison medical systems. More importantly, there are likely no such states. See Andrew P. Wilper et al., The Health and Health Care of U.S. Prisoners: Results of a Nationwide Survey, 99 Am. J. Pub. Health 666, 669-71 (2009). Today’s opinion therefore renders damages suits by inmates who suffer grievous injuries as a result of constitutionally forbidden indifference all but impossible in practice. In every case in which state actors are sued for failing to provide minimal medical care — even those cases involving loss of life or serious permanent injury — the defense will be lack of resources, and that defense will almost surely succeed.
This will encourage further constitutional violations: If states do not have to pay damages for depriving inmates of the level of care required to avoid violating the Eighth Amendment, there will be little reason to increase appropriations for prisoner care.
A
Not to worry, the majority says. Although Dr. Brooks can assert a lack of resources defense, that defense will not be available to those who fail to request sufficient resources. Maj. Op. at 1083-84. But again, in reality, no such defendants will exist. Every putative defendant will be able to honestly plead poverty.
Wardens, medical supervisors, and staff doctors have no control over California’s prison budget, which contains “line items” for prison medical, mental health, and dental care. Budget Act of 2013, Assemb. B. 110, 2013 Reg. Sess., § 2.00, No. 5225-002-0001 (Cal.2013) (allocating prison medical funding); see also id. § 32.00 (limiting departmental expenditures to the appropriated amount) ;Cal. Gov’t Code § 13324 (prohibiting expenditures in excess of a department’s budget). Prison officials may only spend in excess of the Department of Corrections and Rehabilitation’s budget if so ordered by a court-appointed receiver. Cal. Assemb. B. 110, § 2.00, No. 5225-002-0001; see Plata v. Schwarzenegger, No. C01-1351 TEH, 2005 WL 2932253 (N.D.Cal. Oct. 3, 2005). The entities that control California’s prison budget — the receiver and the state legislature — are immune from damages suits. Bogan v. Scott-Harris, 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (providing absolute immunity for state legislators); Mosher v. Saalfeld, 589 F.2d 438, 442 (9th Cir.1978) (granting absolute quasi-judicial immunity for receivers). And a suit for damages against the state itself is barred by sovereign immunity. Edelman v. Jordan, 415 U.S. 651, 676, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, even accepting the majority’s limitation of its rule, there is really no one left to sue.
B
The majority’s alternative answer is that lack of resources is not a defense to a suit for injunctive relief. Maj. Op. at 1083. But injunctive relief provides no comfort to an inmate who loses a limb because of untreated diabetes. For such constitutional violations, “it is damages or nothing.” Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 410, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring in the judgment). Indeed, even for prisoners not yet injured by constitutionally deficient conditions, history counsels skepticism about the utility of injunctive relief. See Brown v. Plata, — U.S. —, 131 S.Ct. 1910, 1923-28, 179 L.Ed.2d 969 (2011) (documenting California’s failure, in the face of multiple remedial injunctions, to improve prison medical care).[2]
*1099 More importantly, the majority’s distinction between damages and injunctive relief finds no support in the Eighth Amendment. Cruel and unusual punishment violates the Eighth Amendment regardless of the inmate’s prayer for relief. But, in the eyes of the majority, refusing to treat an inmate because of budget constraints is cruel and unusual when an inmate requests equitable relief, but somehow not so when he requests monetary relief.
The majority has thus made injunctive relief the default remedy for Eighth Amendment violations. The law is precisely to the contrary. Rather, “[a] damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees .... ” Owen v. City of Independence, 445 U.S. 622, 651, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Moreover, Congress has warned that federal courts should rarely issue equitable relief in prison condition cases, Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), and the Supreme Court has often emphasized the same, see e.g., Farmer, 511 U.S. at 846-47, 114 S.Ct. 1970; Turner v. Safley, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Bell v. Wolfish, 441 U.S. 520, 562, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 404, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974).
The majority thus today runs roughshod over the general presumption in favor of legal remedies over equitable relief. “[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief. Under the ordinary convention, the proper inquiry would be whether monetary damages provided an adequate remedy, and if not, whether equitable relief would be appropriate.” Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60, 75-76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992); see also Carey v. Piphus, 435 U.S. 247, 256-57, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (“To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of compensatory damages.”); Bivens, 403 U.S. at 395, 91 S.Ct. 1999 (“Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty.”). By denying inmates an adequate remedy at law, the majority inverts the basic law/equity presumption.
II
In the end, the only rational justification for today’s decision is concern for the prison medical provider. That solicitude is valid: With shoestring budgets, prison doctors must triage medical care. “California prison wardens and health care managers make the difficult decision as to which of [various class actions] they will fail to comply with because of staff shortages and patient loads.” Plata, 131 S.Ct. at 1927 (quoting Receiver’s Report re Overcrowding, Plata v. Schwarzenegger, No. C01-1351-TEH). It would, of course, be unfair to subject a doctor to personal *1100 liability because he could not immediately treat every inmate.
But this case does not deal with the imposition of liability on a doctor who was unable to see a patient. Peralta managed to become Dr. Brooks’ patient, and the suit attacks decisions made by Dr. Brooks from that point forward. Peralta v. Dillard, 704 F.3d 1124, 1133-34 (9th Cir.2013) (Berzon, J., dissenting). More importantly, the majority’s focus on the personal liability of prison physicians ignores an important reality- — the state is in every respect the real party in interest in a damages suit.
California indemnifies employees for torts committed in the scope of their employment.[3] Cal. Gov’t Code § 825. “Indemnification is ‘near[ly] universal’ among state and local entities, either as a matter of official policy or practice.” Peralta, 704 F.3d at 1136 (Berzon, J., dissenting) (quoting Schlanger, supra, at 1676 n. 391).
California not only indemnifies prison officials named as defendants in § 1983 actions, but also pays for their legal defense. Cal. Gov’t Code §§ 825, 995. Yet, the majority allows the state — while funding and directing the defense — simultaneously to argue that it would be unfair to impose liability because of budgeting decisions made by the state itself. If that defense succeeds, the only financial winner is the very entity that created the problem in the first place.[4]
We should not countenance such a charade. When a state funds its employee’s defense and indemnifies him against any judgment, it ought not then assert that he is faultless because the state is really to blame. The policy concern that no doctor will work for a prison if he faces the possibility of personal liability has already been addressed (and apparently effectively so) by California’s promise to hold the physician harmless. Having made the policy decision to incarcerate a large number of wrongdoers, California should not be allowed to avoid the Eighth Amendment consequences of that decision by systematically underfunding medical care. At a minimum, when a state attempts to do so, we should create an exception to the judge-made collateral source rule and allow the plaintiff to inform jurors that the state, not the individual defendants, will pay any compensatory damages awarded. See Bell v. Clackamas Cnty., 341 F.3d 858, 868 (9th Cir.2003).
Such an approach would not, as the majority suggests, Maj. Op. at 1084, violate state sovereign immunity. States have no obligation to indemnify their employees for damages imposed because of constitutional violations. But, when a state chooses to *1101 do so, the state agent should not be heard to argue that the imposition of liability on him individually is unfair. Section 1983 and the Constitution.do not codify a collateral source rule.
Ill
Today’s decision, as Judge Christen’s dissent convincingly ■ demonstrates, is wrong on the record of this case. But even if that were not so, the decision sweeps far too broadly, effectively foreclosing any liability for permanent injuries and deaths caused by the deliberate indifference of state funding authorities. I therefore- dissent from the affirmance of the judgment in favor of Dr. Brooks.
For the reasons set forth in Judge Christen’s dissent, I also cannot join the majority opinion insofar as it affirms the judgment as a matter of law in favor of Dr. Dillard (pretermitting, as did the district court,- any claim of qualified immunity). As to Dr. Fitter, the majority correctly holds that he was entitled to qualified immunity, as he relied on his staffs medical judgment, and I join its opinion on that score alone.

. The majority suggests that Peralta sued because his teeth were not cleaned. Maj. Op. at 1081-82, 1085-86. Judge Christen’s dissent rightly dismisses this suggestion. Christen Diss. at 1089-90. Given that there is no clearly established right to teeth cleaning, the opinion could have dismissed such a claim on qualified immunity grounds.

. Obtaining equitable relief before one suffers permanent injury can require herculean efforts. A prisoner first has to exhaust administrative remedies. 42 U.S.C. 1997e(a). Then, a typically pro se litigant must either prevail in court or receive a favorable settlement. "Of 55,376 inmate civil rights cases that ended in 2000, 49,492 were coded as pro se. Of these, 1411 (2.85%) were coded as having settled; 491 (0.99%) were coded as having gone to trial; 52 (10.59% of trials) were coded as ending in a trial victory for the plaintiff.” Margo Schlanger, Inmate Litigation, 116 Harv. L.Rev. 1555, 1610 n. 158 (2003).

. Every other state in our Circuit does the same. See Ariz.Rev.Stat. § 41-621; Idaho Code § 6-903; Mont.Code Ann. § 2-9-305; Nev.Rev.Stat. § 41.0349; Or.Rev.Stat. § 30.285; Wash. Rev.Code § 4.92.075. Although Alaska does not indemnify by statute, Alaska Stat. § 09.50.253(f), its collective bargaining agreement holds prison doctors harmless for torts committed in the scope of their employment. Collective Bargaining Agreement between the State of Alaska and the Alaska Correctional Officers Association, Art. 29, available at http://doa. alas-ka.gov/dop/fileadmin/LaborRela-tions/pdf/contracts/ACO ACO2012-2013.pdf.Hawaii authorizes, but does not mandate, indemnification. Hawaii Rev. Stat. § 662-16. But it also apparently protects prison doctors by agreement. Institutional, Health and Correctional Workers Bargaining Unit 10 Agreement, § 63.18, available at http://dhrd.hawaii.gov/wp-content/uploads/ 2012/12/BU-l 0-UPW-2007-09-CBA.pdf.

. California will not indemnify an employee who acts outside of the scope of employment. Cal. Gov’t Code § 825. But, no such situation is presented here; all defendants clearly acted within the scope of their employment and were defended and indemnified by the State.